Filed 11/15/24  P. v. Flores CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>JON EDWARD FLORES,<br><br>　　　Defendant and Appellant. | E082924<br><br>(Super.Ct.No. FWV1101362)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson, Judge.  Affirmed.

Gregory L. Rickard, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

1

## INTRODUCTION

Defendant Jon Flores appeals the trial court's denial of his postjudgment petition for resentencing under Penal Code[1] section 1172.6 at the prima facie stage. Counsel originally filed a brief under *People v. Delgadillo* (2022) 14 Cal.5th 216, 360. However, we asked for supplemental briefing for clarification on a few issues. Defendant has now filed a supplemental opening brief arguing the record of conviction does not establish that he could be convicted of murder under the revisions made in section 1172.6. We affirm.

## PROCEDURAL BACKGROUND

In 2015, a jury convicted defendant of first degree murder (§ 187, subd. (a), count 1), carjacking (§ 215, subd. (a), count 2), active gang participation (§ 186.22, subd. (a), count 3), and assault with a firearm (§ 245, subd. (a), count 4). As to the murder and carjacking, the jury found that defendant personally and intentionally discharged a firearm causing death to the victim. (§ 12022.53, subd. (d).) As to the murder, carjacking, and assault, the jury found that a principal personally used a firearm (§ 12022.53, subd. (b)), and the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A).) As to the assault, the jury found that defendant personally discharged a firearm. (§ 12022.53, subd. (c).) The trial court imposed a total sentence of 143 years to life.

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

2

Defendant appealed and this court affirmed, but reduced his sentence to 135 years to life. (*People v. Flores* (Oct. 30, 2017, E065455 [nonpub. opn.].)**2**

On November 9, 2022, defendant filed a petition for resentencing under section 1172.6 and the trial court appointed counsel.

The court held a hearing on December 1, 2023, and denied the petition, concluding there was no prima facie case. It stated: "I'm denying the prima facie finding. The jury was instructed on one theory of murder, which was felony murder, but they had to also find, according to the Elements [*sic*], that he also caused the death, not that he aided and abetted and someone else caused it. They were only instructed that he caused the death. They had to find that he caused the death as one of the Elements [*sic*] of the instruction they were given. Further, they also found true that in the commission of the murder, that he personally and intentionally discharged a firearm, causing great bodily injury, or death." The prosecutor then corrected the court by noting that the jury's verdict on the gun enhancement did not include causing great bodily injury, but only that defendant caused the death. The court conceded.

---

**2** On September 12, 2024, we granted the People's motion to take judicial notice of the records in defendant's prior appeal case No. E065455. The clerk's transcript and the reporter's transcript from that case shall be referred to as "1CT" and "1RT", respectively. The clerk's transcript and the reporter's transcript from the instant case No. E082924 shall simply be referred to as "CT" and "RT", respectively.

## DISCUSSION

### The Trial Court Properly Denied Defendant's Petition

Defendant contends the trial court erred in summarily denying his resentencing petition at the prima facie stage. He claims the record of conviction was not sufficient to establish he was the actual killer, as required by amended section 189, subdivision (e), for felony murder liability. The People argue that defendant's murder conviction, combined with the true finding that he personally and intentionally discharged a firearm causing death, establish that he was the actual killer and is thereby ineligible for relief under section 1172.6. We agree with the People.[3]

A. *Resentencing Law*

Effective January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess., Stats. 2018, ch. 1015 (Senate Bill 1437)) was enacted to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).) Senate Bill 1437 "substantially modified the law relating to vicarious liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder [Citation] and

---

[3] In his opening brief, defendant argued the record of conviction also did not establish the two other factors for concluding a defendant could be liable under a felony murder theory — that the defendant aided and abetted the actual killer with the intent to kill, and that the defendant was a major participant in the underlying felony and acted with reckless disregard to human life. However, we note that in his reply brief, defendant states both parties agree the only issue is whether jurors found that he was the actual killer. Therefore, we will only discuss this issue.

4

by narrowing the scope of felony murder (§§ 188, subd. (a)(3), 189, subd. (e))." (*People v. Lopez* (2022) 78 Cal.App.5th 1, 11 (*Lopez I*).)

"Senate Bill 1437 added three separate provisions to the Penal Code. First, to amend the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.'" (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*), superseded by statute on another ground as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.)

Second, Senate Bill 1437 "eliminated the natural and probable consequences doctrine by adding the following language to section 188: 'Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.'" (*Lopez I*, *supra*, 78 Cal.App.5th at p. 11; § 188, subd. (a)(3); *Gentile, supra*, 10 Cal.5th at pp. 842–843.)

"Third, Senate Bill 1437 added section 1170.95[4] to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Gentile*, *supra*, 10 Cal.5th at p. 843.)

Under section 1172.6, the relief process begins with the filing of a petition containing a declaration that all requirements for eligibility are met (§ 1172.6, subd. (b)(1)(A)), "including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 (§ 1172.6, subd. (a)(3))." (*People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)

If the petition complies with the requirements of section 1172.6, subdivision (b)(1), "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1172.6, subd. (c).) Where a petitioner has made the requisite prima facie showing that he is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c) & (d)(1).)

At the prima facie stage, the court may deny a petition only if the petitioner is ineligible for relief as a matter of law. (*Lewis, supra*, 11 Cal.5th at p. 966.) In other

---

[4] Effective June 30, 2022, the Legislature renumbered section 1170.95 as section [¶]1172.6, with no substantive change in text. (Stats. 2022, ch. 58, § 10.) We will cite to section 1172.6 for ease of reference.

words, the petition and the record of conviction must "establish conclusively that the defendant is ineligible for relief." (*Strong, supra*, 13 Cal.5th at p. 708.) This is a pure question of law that we review de novo. (*Lopez I*, *supra*, 78 Cal.App.5th at p. 14.) In determining whether the defendant has made a prima facie showing of entitlement to relief, the trial court "'should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law.' [Citation.] The court's authority to summarily deny a petition is thus limited to 'readily ascertainable facts' taken from the record of conviction . . ." (*People v. Davenport* (2021) 71 Cal.App.5th 476, 481.) The record of conviction includes the charging document, verdict forms, closing arguments, and jury instructions. (*People v. Jenkins* (2021) 70 Cal.App.5th 924, 935.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis, supra*, 11 Cal.5th at p. 972.)

B. *Jury Instructions and Closing Argument*

As a general principle, the jury was instructed: "Homicide is the killing of one human being by another. Murder is a type of homicide. The defendant is charged with murder." (CALCRIM No. 500)

The trial court instructed the jury on two theories of murder: felony murder (CALCRIM No. 540A) and aiding and abetting (CALCRIM Nos. 400 and 401). CALCRIM No. 540A stated that "defendant is charged in Count 1 with murder, under a theory of felony murder." The elements of the felony murder instruction stated that, to

7

prove defendant guilty of first degree felony murder, the People were required to prove that: (1) defendant committed carjacking; (2) he intended to commit carjacking; and (3) while committing carjacking, "the defendant caused the death of another person." (CALCRIM No. 540A) The court separately instructed the jury on carjacking. (CALCRIM No. 1650)

In addition, the court instructed the jury under CALCRIM No. 3149 regarding personal use of a firearm causing death per section 12022.53, subdivision (d). Pursuant to that instruction, the court stated: "If you find the defendant guilty of the crimes charged in Counts 1 and 2 [murder and carjacking], you must then decide whether, for each crime, the People have proved the additional allegation that the defendant personally and intentionally discharged a firearm during that crime causing death." The court instructed the jury it could only find the allegation true if the prosecution proved: (1) defendant personally discharged a firearm during the commission of the charged crime; (2) he intended to discharge the firearm; and (3) "the defendant's act caused the death of a person." The court further instructed: "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all the circumstances established by the evidence."

8

In his closing argument, the prosecutor acknowledged there were two perpetrators — defendant and J.A. The prosecutor stated, "[H]ow do we attribute criminal liability when there is two guys, you know, committing the crime together, you know? How do we divide it up? Well, aiding and abetting makes it very simple. Basically, if they're committing a crime together with knowledge of what they're doing, they're both liable, okay?" He noted the aiding and abetting concept applied to counts 1 and 2 and explained the aiding and abetting instruction. However, the prosecutor stated his position was that defendant was the perpetrator and J.A. was "just kind of tagging along." He argued that "the evidence is overwhelming that [defendant] is really the perpetrator here." The prosecutor stated that defendant committed a carjacking, and then argued for a finding of first degree murder, based on the felony murder doctrine. With respect to CALCRIM No. 3149, the prosecutor explained that this personal firearm enhancement was "the special allegation for the shooter." He then asserted that "the evidence is pretty convincing that [defendant] was the shooter, okay" and pointed out evidence that defendant was "boasting about his kill."

C. *The Record of Conviction Establishes The Jury Found That Defendant Was the Actual Killer*

The jury convicted defendant of first degree felony murder — that is, "[w]hile committing carjacking, he caused the death of another person." It also found that he personally and intentionally discharged a firearm causing death. The key question in determining whether the trial court properly denied defendant's petition is whether it

9

was possible for a juror to have (1) found him guilty of felony murder, and (2) found to be true the personal and intentional firearm use allegation, without also finding he personally killed the victim. (See *People v. Harden* (2022) 81 Cal.App.5th 45, 54 (*Harden*).) We conclude that, as instructed, no juror could have voted to convict defendant as anything other than the actual killer.

First, the jury was instructed that defendant was charged with murder, which is "the killing of one human being by another." (CALCRIM No. 500.) This language told the jury that a person who kills a human being is guilty of murder. The instruction on murder was followed by CALCRIM No. 540A, telling the jury that defendant was charged with murder in count 1 under a theory of felony murder, and that to establish he was guilty under this theory, the People had to prove he intentionally committed carjacking and, while committing it, "caused the death of another person." The jury found that defendant committed carjacking. It also found defendant guilty of first degree murder, as charged in count 1.

Further, the jury was instructed with CALCRIM No. 3149 that, if it found defendant guilty of murder and carjacking, it had to decide if the People proved that "defendant personally and intentionally discharged a firearm during that crime causing death." On causation, the trial court instructed the jury as follows: "An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes."

10

The jury found the firearm allegation true. The natural meaning of "personally and intentionally discharged a firearm" is that defendant himself discharged the firearm. (See *Harden*, *supra*, 81 Cal.App.5th at p. 55.) By finding true this enhancement allegation, the jury necessarily found that defendant's act of personally discharging a firearm "caused the death of a person." It also necessarily found that the victim's death was "the direct, natural, and probable consequence of [defendant's] act" and "the death would not have happened without the act." (See *Lopez I*, *supra*, 78 Cal.App.5th at p. 16.) Additionally, in his closing argument, the prosecutor explained, with respect to CALCRIM No. 3149, that the personal firearm enhancement was "the special allegation for the shooter." He then argued that defendant was the shooter. Thus, the jury's true finding that defendant personally discharged a firearm directly causing death means it determined that defendant was the shooter who killed the victim.

Thus, when viewing the jury instructions, closing argument, and the verdicts as a whole, the record of conviction establishes as a matter of law that the jury determined defendant was the shooter. (See *Lopez I*, *supra*, 78 Cal.App.5th at p. 13.) Further, the instructions and verdicts show the jury convicted defendant of first degree felony murder and the personal firearm use enhancement based on a finding that he actually killed the victim. (See *Harden*, *supra*, 81 Cal.App.5th at p. 56.) "[D]efendants convicted of felony murder are not eligible for relief if they were the actual killer." (*Id.* at p. 53.) Therefore, the trial court properly denied defendant's resentencing petition. (See *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 (*Cornelius*) [where jury convicted defendant of

11

murder and found true a section 12022.53, subdivision (d) allegation, "the jury implicitly found [he] was the 'actual killer,' and the changes to sections 188 and 189 are inapplicable"]; see also, *People v. Verdugo* (2020) 44 Cal.App.5th 320, 330 (*Verdugo*) [record of conviction establishes a petitioner is ineligible for relief where he "was found to have personally and intentionally discharged a firearm causing great bodily injury or death in a single victim homicide within the meaning of section 12022.53, subdivision (d)"].)[5]

Defendant relies on *Lopez I*, *supra*, 78 Cal.App.5th 1 to argue that the jury's verdict and findings do not establish he was the actual killer. *Lopez I* involved a felony-murder conviction where, like the instant case, the jury was instructed under CALCRIM No. 540A that the defendant must have "caused the death" of the victim. (*Lopez I*, *supra*, 78 Cal.App.5th at p. 16.) The jury was also instructed that to find a robbery-murder special circumstance true under section 190.2, subdivision (a)(17), it had to find the defendant "did an act that caused the death" of the victim. (*Id.* at pp. 15, 16.) As in this case, "[o]n the subject of causation, the trial court instructed the jury as follows: 'An act causes death if the death is the direct, natural, and probable consequence of the act and the death would not have happened without the act. A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes.'" (*Id.* at p. 16.) The jury returned a guilty verdict and found true the robbery-murder special circumstance.

---

[5]  Both *Cornelius* and *Verdugo* were overruled on other grounds in *Lewis*, *supra*, 11 Cal.5th at pp. 961-962.

Despite the jury instructions and jury findings, the *Lopez I* court held the record of conviction did *not* establish, as a matter of law, that the defendant was the actual killer. (*Lopez I*, *supra*, 78 Cal.App.5th at pp. 16-19.)  The court found that, while the record of conviction established that the defendant proximately caused the victim's death (i.e., committed an act that causes death), it did not necessarily establish that he *personally* killed the victim (i.e., was the actual killer).  (*Id*. at pp. 17-20.)

The critical distinction between *Lopez I* and the instant case is the jury's additional findings here.  *Lopez I* had a robbery-murder special circumstance finding, not a section 12022.53, subdivision (d) finding.  In *Lopez I*, "[t]he jury was instructed with CALCRIM No. 730 that to find the robbery-murder special-circumstance allegation to be true, the jury had to find defendant 'did an act that *caused the death of another person*.'" (*Lopez I*, *supra*, 78 Cal.App.5th at p. 16.)  The instruction said nothing about the defendant's personal commission of the act that directly caused the death.  In contrast, here, to find the section 12022.53(d) allegation true, the jurors had to find the prosecution proved defendant personally and intentionally discharged a firearm during the murder and carjacking, and "the defendant's act [of personally discharging a firearm] caused the death of a person."  (CALCRIM No. 3149.)  The jurors were instructed that "[a]n act causes death if the *death is the direct*, natural, and probable *consequence of the act*."  (CALCRIM No. 3149, italics added.)

Defendant suggests "[a] number of scenarios could have occurred in which [his] gun discharge caused death, but he was not the actual killer," such as, "he could have

13

fired a warning shot that led to a struggle which resulted in an accomplice firing the lethal shot." However, unlike *Lopez I,* where the special circumstance could be true as long as the defendant committed any act that *proximately* caused the victim's death, the jury here could not find the section 12022.53, subdivision (d) allegation true unless it found that defendant personally committed the specific act of discharging a firearm, the direct consequence of which was the victim's death. Notably, even though section 12022.53, subdivision (d), requires only proximate causation and not actual causation (*People v. Lopez* (2021) 73 Cal.App.5th 327, 333 (*Lopez II*).), and proximately causing is not the same as personally inflicting harm (*People v. Bland* (2002) 28 Cal.4th 313, 336), the trial court here did *not* instruct the jury on proximate causation. Rather, the jury was specifically instructed that it could only find the allegation true if the prosecution proved "the defendant's act *caused* the death of a person." There was no language in the instruction about proximately causing the victim's death. (Compare *Lopez II*, *supra*, 73 Cal.App.5th at p. 333 [jury was given an instruction on proximate causation and found true, under section 12022.53, subdivision (d), that the defendant discharged a firearm, proximately causing the victim's death].)

In sum, we conclude that defendant's record of conviction establishes, with no factfinding, weighing of evidence, or credibility determinations, that he was the actual killer. Given the "defendant caused the death of another person" language in CALCRIM No. 540A, along with the "defendant personally discharged a firearm during the commission of the [murder and carjacking] and "the defendant's act caused the death of a

14

person" in CALCRIM No. 3149, the jury, in returning guilty verdicts and a true finding, necessarily found that defendant killed the victim. Therefore, the trial court properly found him ineligible for relief and denied his petition at the prima facie stage.

<u>DISPOSITION</u>

The trial court's order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>FIELDS</u>
J.

We concur:

<u>McKINSTER</u>
        Acting P. J.

<u>RAPHAEL</u>
                J.

15